UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TONY ROMANO,

       Plaintiff,

v.                                    Case No: 2:12-cv-313-FtM-29CM

PRISON HEALTH SERVICES,
INC., a foreign corporation,
INDIANA CRUZ, individually,
as those persons providing
health services to prisoners
at Collier County Jail, as
employees of Prison Health
Services and/or Corizon
Health Services, MARYAM
NABAVI, individually, as
those persons providing
health services to prisoners
at Collier County Jail, as
employees of Prison Health
Services and/or Corizon
Health Services, TRINITY
SERVICES GROUP, INC., a
Florida corporation, TOM
BOWMAN, individually, as
those persons providing
nutritional services to
prisoners at Collier County
Jail as employees of Trinity
Services Group, and SANDRA
STERNAL, individually, as
those persons providing
nutritional services to
prisoners at Collier County
Jail as employees of Trinity
Services Group,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court upon the following:

The motion for summary judgment on Plaintiff's
civil rights claims filed by Defendants Tom

Bowman and Sandra Sternal (Doc. 161, filed July 24, 2013);

The motion for summary judgment on Plaintiff's negligence claims filed by Tom Bowman, Sandra Sternal, and Trinity Services Group, Inc. (Doc. 162, filed July 24, 2014);

The motion for summary judgment filed by Defendants Alan Crooks, Kevin McGowan, and Kevin J. Rambosk (Doc. 155, filed July 10, 2014);

The affidavit and statement of undisputed facts filed by Plaintiff Tony Romano ("Plaintiff") (Doc. 176, filed December 8, 2014);

The "Motion Incorporating all Grievances and Notary Letters into Evidence in the Form of Exhibits Filed in Support of Summary Judgment" filed by Plaintiff (Doc. 177, filed December 18, 2014); and

The "Supplement/Plaintiff's Third Amendment and Response to Defendants' Motions for Summary Judgment" filed by Plaintiff (Doc. 178, filed December 18, 2014).

For the reasons set forth in this Order, the motions for summary judgment filed by the defendants (Doc. Nos. 155, 161, 162) are **GRANTED**. Plaintiff's motion to incorporate all grievances and notary letters into evidence (Doc. 177) is **GRANTED** to the extent that the Court will consider the arguments and evidence set forth in Plaintiff's pleadings.

I.  **Background**

Plaintiff initiated this action on June 5, 2012 by filing a *pro se* complaint and several "supplements" to the complaint against Defendants Kevin J. Rambosk, Richard P. Gibbons, Prison Health Services, Inc., Corizon Health, Inc., Indiana Cruz, Maryam Nabavi,

- 2 -

Jannette Valentine, Marcia Eckloff, Priscilla Upton, Trinity Services Group, Inc., Tom Bowman, Sandra Sternal, Richard Daniels, David Dellinger, Alan Crooks, Beth Richards, Kevin McGowan, Patricia Gifford, Lynni O'Haver, Nelson P. Ray, Nino Armino, Virginia Wilson, and Elizabeth Alfieri (Doc. Nos. 1, 5, 6, 8, 10, 11, 12, 14, 19). Because Plaintiff had submitted a voluminous amount of exhibits to the Court, and had done so in a piecemeal fashion, the Court rejected the exhibits and instructed Plaintiff to compile the exhibits into one filing with each exhibit clearly marked and indexed (Doc. 16 at 2; Doc. 22). Plaintiff was also instructed that "a table of contents or index (with a title, description, and date of each document) shall be included to aid the Court in the location of each exhibit" (Doc. 16). Plaintiff did not re-submit the exhibits.

On November 15, 2012, Attorney Joseph A. Davidow entered an appearance on Plaintiff's behalf and filed a motion to amend the complaint (Doc. Nos. 29, 31). An amended complaint was filed on January 9, 2013 (Doc. 33). Several defendants filed motions to dismiss (Doc. Nos. 69, 77, 91, 92). Plaintiff filed a second amended complaint on July 19, 2013 (Doc. 113). In the second amended complaint, Plaintiff raised thirty-two separate claims against various defendants. Id. Again, motions to dismiss were filed (Doc. Nos. 114, 115, 119, 122).

On January 9, 2013, this Court entered an opinion dismissing Plaintiff's claims for injunctive and declaratory relief because

Plaintiff was no longer incarcerated at the Collier County Jail (Doc. 132).  The Court also noted that Plaintiff's second amended complaint made no specific allegations against Alan Crooks, David Dellinger, Richard Daniels, Virginia Wilson, Nino Armino, Nelson Ray, Lynni O'Haver, Richard Gibbons, Patricia Gifford, Beth Richards, Kevin McGowan, Indiana Cruz, Maryam Nabavi, Jannette Valentin, Marcia Eckloff, Priscilla Upton, or Elizabeth Alfieri and dismissed the individual-capacity claim against these defendants without prejudice (Doc. 132 at 15-20).  Plaintiff's claim that every individual defendant caused Plaintiff "to suffer because of disability" due to "an official policy, procedure, ordinance or directive of the Collier County Sheriff's Office to refuses to accommodate in any manner, detainees with specific needs due to their disabilities" was dismissed because Plaintiff failed to name any specific "official capacity" defendant so as to provide notice to the entity being sued. Id. at 20-21.  Plaintiff's negligence claims against the medical staff at the Collier County jail were dismissed due to Plaintiff's failure to comply with Florida's pre-suit notice requirements. Id. at 21. Plaintiff's claims against Defendant Tom Bowman, Sandra Sternal, and Trinity Services Group were allowed to proceed "to the limited extent that they are based solely upon Defendants Bowman's and Sternal's alleged failure to provide Plaintiff with an appropriate renal diet." (Doc. 132 at 27).  Plaintiff's negligence claims against these defendants and against Trinity Services Group, Inc. were

- 4 -

also allowed to proceed. Id.  Plaintiff's First Amendment retaliation claims were allowed to proceed against Defendants McGowan, Crooks, Rambosk, and Bowman. Id.  Plaintiff was directed to file a third amended complaint should he wish to proceed on any of the dismissed claims (Doc. 132 at 31).

Counsel for Plaintiff sought, and was granted, an extension of time to file a third amended complaint (Doc. Nos. 133, 135). No third amended complaint was filed, and the remaining parties were ordered to conduct discovery (Doc. 139).  Because no third amended complaint was filed, Elzabeth Alfieri, Corizon Health, Inc., Marcia Eckloff, Priscila Upton, Jannette Valentine, Nino Armino, Richard Daniels, David Dellinger, Richard P. Gibbons, Patricia Gifford, Lynni O'Haver, Nelson P. Ray, Beth Richards, and Virginia Wilson were dismissed from this case (Doc. Nos. 141, 144).

Two weeks after the time to file a third amended complaint expired, Joseph A. Davidow filed a motion to withdraw as Plaintiff's attorney (Doc. 146).  In the motion, Davidow asserted that he had spoken with Plaintiff about his decision to withdraw and that Plaintiff did not object. Id.  Neither Plaintiff nor any party filed a response to the motion to withdraw, and the motion was granted (Doc. 147).

## II.  Plaintiff's Second Amended Complaint

The allegations in Plaintiff's second amended complaint concern conditions at the Collier County Jail ("CCJ") from September 30, 2011 until July 28, 2012 and from January 3, 2013

until July 19, 2013, the date on which Plaintiff filed his second amended complaint (Doc. 113 at ¶¶ 13, 19).[1]

Plaintiff asserts that he suffers from intermittent quadriplegia and permanent paraplegia (Doc. 113 at ¶ 12). As a result of his condition, Plaintiff cannot urinate normally and must use a catheter or stent for elimination. Id. at ¶ 12. In order to have normal bowel movements, Plaintiff must eat a medically prescribed diet. Id. at ¶¶ 12, 24. Plaintiff uses long leg braces for short ambulation and an electric wheelchair for longer ambulation. Id. at ¶ 15. During the material times, Plaintiff suffered from carpal tunnel disorder in both wrists which proscribed the use of a manual wheelchair for ambulation. Id. at ¶ 16.

Plaintiff alleged that the cells in which Plaintiff was housed at the Collier County Jail lacked the necessary modifications to accommodate his disabilities (Doc. 113 at ¶ 19). Specifically, the cells lacked sufficient room to turn Plaintiff's wheelchair

---

[1] Notably, the majority of Plaintiff's second amended complaint is taken verbatim from Plaintiff's fourth amended complaint, filed on January 6, 2011 in case number 2:06-cv-375-JES-DNF (Doc. 383), in which Plaintiff sued most of the same defendants. The parties in Plaintiff's prior case reached a settlement agreement, and that case was dismissed on October 3, 2011 (Doc. Nos. 514, 516). Even though the 2006 case involved conduct that occurred prior to 2007, Plaintiff repeats the same allegations in the instant case. Only the allegations involving conduct that occurred from September 30, 2011 until July 28, 2012 and from January 3, 2013 until July 19, 2013 will be addressed in this Order. Likewise, because many defendants have already been dismissed from this case (Doc. 132), only the allegations involving the remaining defendants will be addressed in this Order.

and did not have transfer mechanisms to allow him to safely move between the bed, toilet, and sink. Id. at ¶ 19. Plaintiff's cells also lacked adequate access to water, soap, and means to clean himself after urinating through the use of a catheter and after defecating. Id. at ¶¶ 1, 299. Because of the lack of accommodation, Plaintiff was often left with feces and urine on his hands with no way to avoid contaminating his wheelchair and clothing. Id. at ¶ 29. Defendants refused to provide Plaintiff with an electric wheelchair and required Plaintiff to use a manual wheelchair to ambulate. Id. at ¶ 20.

Plaintiff was not provided with an adequate number of stents or latex gloves to maintain healthy sterile procedures during urination and defecation (Doc. 113 at ¶ 29). Defendants refused to provide Plaintiff with an appropriate brace for short movements and transfers. Id. at ¶ 29.

Plaintiff filed numerous grievances regarding the lack of ADA accommodations at the Collier County Jail (Doc. 113 at ¶ 21). In response to the grievances, Plaintiff was subjected to discipline in the form of restraints, administrative confinements, the denial of medically necessary supplies, the denial of access to shower facilities, and the denial of an electric wheelchair. Id. at ¶¶ 23, 32.

Plaintiff further asserts that the defendants failed to meet his medically required dietary needs and refused to correct the violations (Doc. 113 at ¶ 27). Plaintiff was served meals that

did not comply with his established dietary requirements, and he received meals that directly conflicted with his medical orders and prescriptions. Id. at ¶ 35.  Plaintiff asserts that as a result of the number of grievances filed, Defendant Bowman "refused to make reasonable accommodations to provide Plaintiff with his medically order[ed] renal diet." (Doc. 115 at ¶ 172).

III. **Motions for Summary Judgment**

   A. **Defendants Tom Bowman, Sandra Sternal, and Trinity Services, Inc. ("Trinity defendants")**

Defendants Bowman and Sternal assert that Plaintiff's claims for compensatory or punitive damages are barred by 42 U.S.C. § 1997e(e); that Plaintiff's food service claims are improperly premised on a theory of *respondeat superior*; Plaintiff's dissatisfaction with his diet does not give rise to a constitutional violation; and that Plaintiff cannot establish a causal relationship between the submission of his grievances and Defendant Bowman's allegedly retaliatory conduct (Doc. 161). Defendants Bowman and Sternal further assert that, even if the Court were to conclude that a constitutional violation occurred, they are entitled to qualified immunity because it is not well established that they acted in a manner inconsistent with Plaintiff's constitutional rights "by endeavoring to ensure that the prisoner plaintiff received meals that were prepared in accordance with the Renal Diet prescribed for him by the CCJ medical department." Id. at 24.

- 8 -

As for the negligence claims filed against Defendant Bowman, Sternal, and Trinity Services Group, Inc., these defendants assert that they are immune from negligence claims pursuant to Florida statute § 768.28(9)(A); they had no duty to provide Plaintiff with the diet of his choice; they provided Plaintiff with a medically prescribed renal diet; they did not cause any of Plaintiff's alleged injuries; and Plaintiff's claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e) (Doc. 162). The defendants also argue that Plaintiff has alleged no reasonable basis for punitive damages. Id. at 162.

In support of their motions, the Trinity Defendants filed: a statement of facts (Doc. 163, "Trinity SOF"); Plaintiff's Deposition (Doc. 163-1, "Plaintiff's Depo."); Deposition of Macia Eckloff (Doc. 163-2; Doc. 163-3, "Eckloff Depo."); Affidavit of Jannette Valentin Gonzalez (Doc. 163-4, "Valentin Gonzalex Depo."); Deposition of Maryam Nabavi (Doc. 163-5, "Nabavi Depo."); Deposition of Indiana Cruz (Doc. 163-6, "Cruz Depo."); Affidavit of Thomas Bowman (Doc. 117, "Bowman Aff."); and Affidavit of Sandra Sternal (Doc. 118, "Sternal Aff.").

**B. Defendants Crooks, McGowan, and Rambosk ("CCJ defendants")**

Defendants Crooks, McGowan, and Rambosk assert that they are entitled to summary judgment on Plaintiff's retaliation claims (Doc. 155). Specifically, the defendants assert that: Plaintiff's claims against Defendant Crooks are both conclusory and predicated solely upon alleged verbal abuse; Plaintiff's assertions against

Defendant McGowan are clearly refuted by the record; and Plaintiff has not established a causal connection between Defendant Rambosk's "custom or policy" and any alleged constitutional violation.   The CCJ defendants also assert that Plaintiff's claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e).   Id. at 10-17.

In support of their motion for summary judgment, these defendants attach Plaintiff's August 20, 2013 deposition (Doc. 155-1, "Plaintiff's Depo.") and a July 7, 2014 affidavit from Defendant McGowan (Doc. 155-2, "McGowan Aff.").

C.   **Plaintiff's Responses**

After seeking three extensions of time in which to do so, Plaintiff filed responses to the defendants' motions for summary judgment.   Plaintiff filed a pleading titled "Affidavit and Statements of Undisputed Fact(s)" in which he reiterated his version of events and provided arguments in favor of his positions (Doc. 176).   In support of his "statement," Plaintiff attached numerous grievances and portions of Marcia Eckloff's deposition (Doc. 176 at 1).[2]   Plaintiff has also filed a large box containing three bundles of hundreds of grievances (each) and a compact disc

---

[2] Plaintiff does not appear to understand that the medical defendants have been dismissed from this case, and he continues to state allegations against them as statements of "undisputed fact." (Doc. 176 at ¶ 19, 20, 37, 48, 51, 77, 102, 103, 109, 112; Doc. 178).   In addition, Plaintiff does not recognize that the only remaining claims against the CCJ defendants are claims of retaliation.   Plaintiff states, and restates, his claim that all the defendants violated the ADA while plaintiff was at the CCJ.

containing more than five hundred pages of Plaintiff's medical records along with a 70-page "Motion Incorporating all Grievances and Notary Letters in to Evidence in the Form of Exhibit's Filed in Support of [Summary Judgment] as if Fully set forth Herein." (Doc. 177).   Finally, Plaintiff has filed a pleading entitled "Plaintiff's Third Amendment and response to Bowman and Sternal's and Rambosk, McGowan and Croks, et.al., Trinity Motion for Summary Judgment and Negligence Claim and Memorandum of Law and Retaliation Claims and (PLRA) Claims for Compensatory and Punitive Damages and Civil Rights Claims." (Doc. 178).

## IV.   **Standards of Review**

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The movant may meet this burden by presenting evidence that would be

admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, (1986).

## V.   **Analysis**

### A.   **Trinity Defendants**

In his second amended complaint, Plaintiff asserts that while incarcerated at the CCJ, he did not receive the medically ordered renal diet to which he was entitled (Doc. 113 at ¶¶ 25, 27, 29, 35, 37, 150).  Specifically, in the "General Allegations" section of his second amended complaint, Plaintiff states:

> Defendants Trinity, Bowman, and Sternal were well aware of these dietary needs, both through medical prescriptions and grievances filed by Plaintiff.  Defendants consistently failed to meet the medically required dietary needs of Plaintiff and habitually refused to correct the violations.  Plaintiff notified

> all relevant Defendants of the dietary
> violation and the danger of conditions caused
> by deviations from those dietary needs on
> numerous occasions. All of Plaintiff's
> requests were ignored.

(Doc. 113 at ¶ 27).

Plaintiff was deposed on August 20, 2013 (Doc. 155-1, "Plaintiff's Depo."). During his deposition, Plaintiff stated that his issues with his diet concerned the Trinity defendant's provision of ground turkey meatballs, boiled eggs, and occasionally cold meals which caused him severe constipation (Plaintiff's Depo. at 91, 94, 95, 97, 98, 105, 113). Plaintiff asserted that when he ate boiled eggs or turkey meatballs, he would get cramps and constipation and would need to take laxatives. Id. at 108, 115-16. Plaintiff stated that he was constipated five times between January and May of 2013 and every thirty days between September of 2011 and July of 2012. Id. at 119-20.

At the deposition, Plaintiff was asked by the Trinity defendants' defense counsel to clarify the nature of his claims against each of the Trinity defendants. Plaintiff asserted that Defendant Sternal wrote an email stating that in her (Sternal's) opinion, Plaintiff should not receive food from the commissary because Plaintiff was on a prescribed renal diet. Therefore, "[Sternal] was involved in violating [his] rights for – to receive commissary." Id. at 110. Plaintiff also claimed that Defendant Sternal would not allow anyone "to make any changes to correct" his diet. Id. at 111. As to Defendant Bowman, Plaintiff asserted

- 13 -

that Defendant Bowman "put[] something" in Plaintiff's turkey
meatball that made it difficult for Plaintiff to digest. Id. at
108.  As to Defendant Trinity Services, Inc., Plaintiff asserted
that this defendant was negligent for not ensuring that he receive
an adequate diet. Id. at 115.

### 1.  Defendant Sternal is entitled to summary judgment on Plaintiff's deliberate indifference claim

The Supreme Court has interpreted the Eighth Amendment to
prohibit deliberate indifference to an inmate's health or safety.
See Hope v. Pelzer, 536 U.S. 730, 737–38 (2002).  A prison official
acts with deliberate indifference when he consciously disregards
an excessive risk to a prisoner's health or safety. Farmer v.
Brennan, 511 U.S. 825, 835–37 (1994).

As noted, Plaintiff's deliberate indifference against
Defendant Sternal is predicated upon this defendant's alleged
"refusal" to allow him to purchase food items from the commissary
or to "allow" the medical staff to make changes to his medically
prescribed renal diet (Plaintiff's Depo. at 110).  The denial of
a medically prescribed diet may constitute an Eighth Amendment
violation under certain circumstances. See Robles v. Coughlin, 725
F.2d 12, 15–16 (2d Cir. 1983); Johnson v. Harris, 479 F. Supp.
333, 336–37 (S.D.N.Y. 1979) (finding violation of Eighth Amendment
where there was a continued failure to provide a diabetic inmate
with a medically appropriate diet, resulting in a decline in his
health).  Mere negligence or inadvertent failure to provide a

medically necessary diet is not a constitutional violation, however. "Deliberate indifference" must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with the prescribed treatment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

It is undisputed that Plaintiff was on a restricted renal diet while he was incarcerated at the Collier County Jail; that Plaintiff was restricted from purchasing food items from the commissary because these items did not comport with the restrictions of a renal diet; and that Defendant Sternal did not make changes to Plaintiff's renal diet even though Plaintiff instructed her to do so. See discussion infra Part V(A)(1)-(3). However, Defendant Sternal has placed evidence in the record showing that she did not prescribe Plaintiff's renal diet; did not control whether Plaintiff was allowed to purchase food items from the commissary; and was not permitted to alter or deviate from an inmate's prescribed renal diet, even if such inmate demanded that she do so.

Defendant Sternal filed an affidavit in which she attested that she is a licensed dietician registered with the Academy of Nutrition and Dietetics and the Commission on Dietetic Registration (Sternal Aff. at ¶ 2). Sternal described the "renal diet" prescribed for Plaintiff as a diet that "emphasizes the controlled intake of protein, sodium and potassium for the purpose of reducing the production of wastes that must be excreted by the

- 15 -

kidneys." Id. at ¶ 7.   She attested that when she learned of Plaintiff's complaints regarding his diet, she spoke with Trinity's CCJ Food Services Director, Defendant Bowman, to confirm that Plaintiff was receiving meals that were prepared in accordance with a renal diet's specifications. Id. at ¶ 11.   She also periodically consulted with the CCJ medical department to confirm that the specifications for Plaintiff's diet remained unchanged "and that the CCJ medical department did not wish to modify the diet in response to the prisoner plaintiff's complaints." Id. at ¶ 12.   She attached to her affidavit a December 13, 2011 "Menu Review & Visit Summary" in which she summarized a December 7, 2011 meeting with medical staff at the CCJ where Plaintiff's medical diet order was discussed and reviewed (Doc. 95-6).   The summary stated that Plaintiff's renal diet was reviewed "and found to be supportive of the current diet order." Id.

As to Plaintiff's assertion that Defendant Sternal was responsible for Plaintiff's restriction from purchasing snacks at the commissary, Defendant Sternal attested:

> On another occasion, the CCSO/CCJ administration asked my opinion, via a request relayed through Tom Bowman, about whether commissary items like honey buns and/or peanut butter and cheese crackers were consistent with the prisoner plaintiff's Renal Diet prescription.   In my response, I explained that commissary items of that nature were inconsistent with the Renal Diet because the prisoner plaintiff's consumption of such items would effectively nullify the Renal Diet's controlled intake of protein, sodium and potassium.   Contrary to the mistaken belief

- 16 -

> expressed by the prisoner plaintiff . . ., I did not restrict his commissary privileges and do not possess the authority to exempt him from the CCSO/CCJ policy that restricts commissary privileges for inmates with medical dietary restrictions.

Id. at ¶ 14.  Defendant Sternal stated that each of the meals prepared for Plaintiff during his confinement at the CCJ complied with the renal diet menu. Id. at ¶ 15.  She attached to her affidavit menus of the meals served to Plaintiff while he was at the CCJ (Doc. 118-1; Doc. 118-2).

The declarations in Defendant Sternal's affidavit are supported by the deposition testimony of Marcia Eckloff, the health services administrator for Corizon Health Care (Eckloff Depo. at 4-5).  Eckloff testified that she had received a letter from Plaintiff's outside health provider instructing that Plaintiff needed a renal diet to protect his kidney function. Id. at 57-58. She stated that a doctor is responsible for determining which diet an inmate is prescribed. Id. at 53.  Once an inmate is prescribed a restricted diet, he is not allowed to purchase food from the commissary because there would be "no way that the dietitian or the doctor would be able to determine whether he was within his renal diet requirements depending on how much of his commissary that he ate every day." Id. at 57.

In her deposition, Dr. Indiana Cruz, one of Plaintiff's treating physicians, testified that only a doctor, physician's assistant, or nurse practitioner is allowed to choose an inmate's diet (Cruz Depo. at 21).  Dr. Cruz noted that Plaintiff suffered

from frequent urinary tract infections and that a renal diet was ordered in 2006 to protect Plaintiff's kidneys "in advance." (Cruz Depo. at 28).   Dr. Cruz explained that Plaintiff's chronic constipation was possibly secondary to the narcotics he was taking. Id. at 11.

When deposed, another of Plaintiff's treating physicians, Dr. Maryam Nabavi, testified that Plaintiff was prescribed a renal diet that consists of low salt, low potassium, no processed meats, cheese, milk, or anything that could cause worsening of the kidney function (Nabavi Depo. at 26).   She believed the renal diet was appropriate for Plaintiff. Id. at 33.   Dr. Nabavi testified that Plaintiff purchased commissary food items that were contraindicated with a renal diet such as cold cut meats, beef jerky, salt crackers, sweets, and Honey Buns, "all with salt content greater than 300 milligrams per serving." Id. at 34.   Dr. Nabavi stated that "[i]n order to be able to follow our medical and health care properly and to have him on the food that he needs to be, he couldn't have commissary." Id. at 42.   Accordingly, she – not Defendant Sternal – ordered that all of Plaintiff's commissary food purchases be discontinued. Id. at 34, 40, 41. When asked whether Plaintiff's alleged constipation could have been caused by his use of Vicoden, Hydrocodone, and Oxycodone, Dr. Nabivi confirmed that these medications could cause constipation. Id. at 46-47.   Dr. Nabavi testified that Plaintiff's underlying spinal cord injury could also lead to constipation. Id. at 47.

Another of Plaintiff's treating physicians, Dr. Jannette Valentin Gonzalez, attested that during the time she treated Plaintiff, he was prescribed a renal diet which is "generally prescribed for the purpose of limiting the production of wastes excreted by the kidneys." (Valentin Gonzalez Aff. at ¶ 4). Valentin Gonzalez attested that restricted diets are based on medical necessity, not inmate food preference, and that "only a Corizon physician can prescribe a restricted medical diet for a CCJ inmate and only a Corizon physician can modify or alter a CCJ inmate's diet prescription." Id. at ¶ 3.  Valentin Gonzalez stated that when Plaintiff would complain about constipation from his food, she explained to him "that the constipation he experienced was more likely attributable to his paraplegia and the side effects of the medications he received as part of his medical treatment, like Vicodin, than to the items served in his Renal Diet meals." Id. at ¶ 6.  She directed the CCJ food service to blend his renal diet meals "into a creamy mixture" for seven days to determine whether doing so would help with Plaintiff's digestive issues. Id. However, Plaintiff refused those meals, so the directive was rescinded.  Id.  Dr. Valentin Gonzalez also inspected the meat items that Plaintiff received and confirmed with Trinity staff that Plaintiff did not receive processed meat in his meals, "but instead received fresh ground chicken, beef and turkey and fresh boneless turkey and chicken breasts." Id. at ¶ 7.  Dr. Valentin

Gonzalez refused to authorize Plaintiff to receive foods that were inconsistent with the renal diet specifications. Id. at ¶ 8.

In his affidavit, Defendant Tom Bowman, Trinity's Food Services Director for the CCJ, attested that the Collier County Sheriff's Office and CCJ administration maintains strict control and supervision over Trinity's operations (Bowman Aff. at ¶ 3). Bowman attested that "[o]nce a restricted medical diet is prescribed for an inmate, Trinity is not permitted to modify or alter the diet prescription absent specific authorization by the CCSO/CCJ administration and/or the CCJ medical department." Id. at ¶ 6. Bowman attested that Plaintiff did not receive any processed meat in his meals; rather Plaintiff received "fresh, sodium free ground chicken, beef and turkey and fresh, sodium free boneless turkey and chicken breasts. The items consist of 100% meat and do not contain preservatives, artificial ingredients or fillers, like soy, but are lightly seasoned with pepper and/or garlic." Id. at ¶ 20. Bowman attached copies of Plaintiff's diet to his affidavit (Doc. Nos. 117-2, 117-3, 117-4).

Defendant Sternal has presented admissible evidence to refute Plaintiff's claims that she was responsible for the rescission of Plaintiff's commissary privileges and that she refused to allow Plaintiff's physicians to alter Plaintiff's medically prescribed diet. The deposition testimony and affidavits of Plaintiff's treating physicians is admissible evidence showing that they collectively thought the renal diet appropriate for Plaintiff to

protect his kidneys and that only a treating physician is allowed to alter a CCJ prisoner's prescribed medical diet. The testimony of Dr. Nabavi is admissible evidence showing that she, not Defendant Sternal, ordered that Plaintiff's commissary food privileges be discontinued because the commissary items Plaintiff wished to consume were inconsistent with a renal diet.

Plaintiff has offered nothing to contradict Defendant Sternal's evidence. Rather, Plaintiff argues that, contrary to his treating physicians' assertions otherwise, Plaintiff was placed on the renal diet solely to ensure that he did not receive processed meats in his meals, and that Defendant Sternal was "negligent for not discussing reason why Plaintiff was prescribed renal diet before emailing Tom Bowman back that an inmate prescribed renal diet should not receive any commissary foods due to sodium and potassium intake knowing fullwell [sic] Plaintiff can eat all the sodium or potassium obtained while prescribed renal diet to avoid any processed meats is the only restriction." (Doc. 176). Plaintiff misses the point; because only a CCJ physician had authority to alter Plaintiff's diet or to order the suspension of Plaintiff's commissary privileges, Defendant Sternal was not negligent and did not violate Plaintiff's constitutional rights when she advised Defendant Bowman that commissary privileges are inconsistent with a renal diet. Whether Sternal knew of Plaintiff's self-described reason for being prescribed a renal diet is irrelevant.

To impose liability under § 1983 on an individual defendant, the defendant's act or omission must *cause* the deprivation of the plaintiff's constitutional rights. <u>Porter v. White</u>, 483 F.3d 1294, 1306 n. 10 (11th Cir. 2007)("Congress did not intend for § 1983 liability to attach where causation is absent," and as such "[a] § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."). Here, Plaintiff has not shown that Defendant Sternal was responsible for prescribing Plaintiff's renal diet or that she had the authority to change it. The evidence before this Court shows the opposite. Therefore, Plaintiff has failed to show a causal connection between Defendant Sternal's actions and any alleged constitutional violation.

Based on the evidence on the record before the Court, the Court concludes that no rational jury could find that Defendant Sternal acted with the requisite deliberate indifference necessary to support a 42 U.S.C. § 1983 claim. Defendant Sternal is entitled to summary judgment on Plaintiff's deliberate indifference claim.

> **2.   Defendant Bowman is entitled to summary judgment on Plaintiff's deliberate indifference claim**

Plaintiff testified in his deposition that his deliberate indifference claim against Defendant Bowman is based upon Plaintiff's belief that Defendant Bowman put something in his turkey meatball that caused Plaintiff to have difficulty digesting it, resulting in chronic constipation (Plaintiff's Depo. at 107-08).

Evidence has been presented that the meat in Plaintiff's renal diet consisted of ground chicken, beef, and turkey, boneless turkey, and chicken breasts (Valentin Gonzalez Aff. at ¶ 7; Bowman Aff. at ¶ 20; Doc. 94-2; Doc. 94-3; Doc. 94-4; Sternal Aff. at ¶ 9, Ex. A). Plaintiff does not assert that he is allergic to these meats or that consumption of such is contraindicated by his medically prescribed renal diet. To the contrary, Plaintiff admitted that when not incarcerated, he regularly consumes turkey, although not ground turkey (Plaintiff's Depo. at 124). Other than Plaintiff's assertion that the turkey meatballs he was served "must" have contained "processed meat" because they caused constipation, he has presented no evidence to show that there is a genuine issue of fact as to the substance of the turkey meatballs. That Plaintiff did not like the meatballs does not give rise to a constitutional violation. Prisons have an affirmative duty to provide their inmates with nutritionally adequate food. See French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985). However, assuming a diet's nutritional adequacy, prison officials, not the inmates, have the discretion to control its

contents. See Divers v. Dep't of Corr., 921 F.2d 191, 194 (8th Cir. 1990); see also Palmenta v. Arnone, Case No. TTDCV125005609S, 2012 WL 2335307, at *4-5 (Conn. Super. May 24, 2012) (prisoner's desire for a "gluten-free diet with adequate fiber" failed to state a claim); Collado v. Sposato, Case No. 12-cv-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 24, 2012)("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu.").

Likewise, to survive summary judgment, Plaintiff must raise a factual question as to whether Defendant Bowman's alleged deliberate indifference actually caused the harm alleged by Plaintiff. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). The Trinity defendants have presented evidence from Plaintiff's doctors that Plaintiff's constipation was not caused by the food he was served, but was likely caused by Plaintiff's medical condition and the narcotic medications he used (Nabavi Depo. at 45-47; Cruz Depo. at 11). Evidence was also presented that the doctors at the CCJ prescribed medication and other treatment for Plaintiff's constipation, but that Plaintiff refused to take advantage of it (Cruz Depo. at 38; Valentin Gonzalez Aff. at ¶ 6).

This is not a situation in which Defendant Bowman violated Plaintiff's constitutional rights by providing a diet that was contrary to Plaintiff's medical needs. To the extent Bowman was involved in Plaintiff's food choices, he merely restricted

Plaintiff's diet in a manner that was reasonably consistent with Plaintiff's documented medical concerns.   The evidence does not establish any medical reason for the restriction of ground turkey or boiled eggs other than Plaintiff's speculation that eating these foods caused constipation.

Accordingly, Defendant Bowman is entitled to summary judgment on Plaintiff's deliberate indifference claim.

### 3.   Defendant Bowman is entitled to summary judgment on Plaintiff's retaliation claim

In his response to the motion for summary judgment, Plaintiff asserts that Tom Bowman retaliated against him because he continued to receive turkey meatballs and boiled eggs in his meals even after he filed grievances complaining about the turkey meatballs and boiled eggs in his meals (Doc. 176 at ¶ 40).

Inmates do not have a constitutionally protected interest in having grievances resolved to their satisfaction. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (the fact that the defendants did not respond to an inmate's grievance in the manner that he would have preferred does not state a constitutionally significant claim). Therefore, a defendant is not automatically constitutionally liable merely because he refuses to provide an inmate with the preferred response to his grievances.   However, an inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were "the result of

[the inmate's] having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). With respect to the causal element, the inmate must demonstrate that the correctional officials intended to retaliate against him because of his exercise of his First Amendment rights, and that but for the retaliatory motive, the adverse act complained of would not have occurred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Smith, 532 F.3d at 1278. A plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-el v. Britton, 523 U.S. 574, 600 (1998). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010).

An inmate has a First Amendment right to file grievances against prison officials. Smith, 532 F.3d at 1276. Indeed,

Plaintiff testified at his deposition that he filed 2266 such grievances between September 2011 and July 2012 (Plaintiff's Depo. at 126). Moreover, Plaintiff has sent to this Court thousands of unlabeled, bundled grievances which appear to be primarily aimed towards Plaintiff's dissatisfaction with the meals he received while incarcerated at the CCJ (Doc. 177). Given the inordinate number of grievances filed by Plaintiff regarding the quality and composition of the meals he received at the CCJ, it cannot be said that he, or an inmate of ordinary firmness, would be chilled from filing such grievances merely because they received turkey meatballs in their meals. Accordingly, Plaintiff has failed to satisfy the second prong of the test set forth in Smith v. Mosely.

Most notably, Plaintiff does not show that, but for Defendant Bowman's alleged retaliatory conduct, he would not have continued to receive turkey meatballs in his meals. It has been established through admissible evidence that only Plaintiff's physicians were authorized to change Plaintiff's medically prescribed diet (Eckloff Depo. at 51, 53, 55, 90; Valentin Gonzalez Aff. at ¶ 8; Nabavi Depo. at 29, 33; Cruz Depo. at 20, 24). Plaintiff admitted that Defendant Bowman told him that he would serve different items upon receiving written instructions from Plaintiff's doctors that he do so (Plaintiff's Depo. at 90, 107). However, Plaintiff's treating physicians did not see any medical reason to alter Plaintiff's diet (Valentin Gonzalez Aff. at ¶ 8; Nabavi Depo. at 33; Cruz Depo. at 30).

In response, Plaintiff has not articulated affirmative evidence showing that his grievances were denied based on anything other than the medical judgment of Plaintiff's treating physicians. In other words, Plaintiff has failed to provide documentary evidence demonstrating that a motivation for Defendant Bowman's failure to address his grievances in a manner satisfactory to Plaintiff was based on Plaintiff's history or pattern of filing grievances and complaints. Plaintiff simply assumes that he did not receive different items on his food tray in retaliation for filing grievances complaining about the items on his food tray. Plaintiff's conclusory allegations based upon his own subjective beliefs are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).

Plaintiff has not presented a genuine issue for trial; therefore, Defendant Bowman is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### 4. The Trinity defendants are entitled to summary judgment on Plaintiff's negligence claims[3]

---

[3] It is not clear to the Court why Plaintiff believes Defendants Sternal, Bowman, or Trinity Services Group, Inc. were negligent in their provision of food to Plaintiff. Much of Plaintiff's handwritten pleadings are indecipherable, and he does not appear to differentiate his deliberate indifference claims from his negligence claims against the Trinity defendants; nor does he separate his ADA claims against other defendants from his food-provision claims. Likewise, Plaintiff does not express his arguments in a logical or a sequential manner. To the extent Plaintiff intended to raise additional negligence claims against the Trinity defendants not addressed in this Order, such claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In his second amended complaint, Plaintiff asserted that "Defendants Trinity, Bowman, and Sternal were well aware of {Plaintiff's} dietary needs, both through medical prescriptions and grievances filed by Plaintiff.  Defendants consistently failed to meet the medically required dietary needs of Plaintiff and habitually refused to correct the violations." (Doc 113 at ¶ 27). At his deposition, Plaintiff asserted that Trinity was negligent for not ensuring that he receive a proper diet (Plaintiff's Depo. at 115).  In his response to the motions for summary judgment, Plaintiff asserts:

> And Trinity Serves Group, Inc, were sent notary letters, must review filed grievances were all negligent because Trinity, Tom Bowman and even Sandra Sternal Exhibits 11-B-11-c ment [sic] with medical Defendant's Valentins, Upton, Marcia, and Bowman and McGowan regrading [sic] Romanos receiving lunch and dinner processed meats were never stop serving knowingly caused adbominal [sic] disability, ether permanent OR continued disabilities.

(Doc. 176 at ¶ 100).  To the extent that Plaintiff asserts that the Trinity defendants were negligent for failing to provide him with a medically prescribed renal diet, the claim must fail.

To maintain an action for negligence against the Trinity defendants for failing to alter his medically prescribed diet upon his request, Plaintiff must establish that the defendants owed a duty, that the defendants breached that duty, and that this breach

caused Plaintiff damages. <u>Florida Dep't of Corr. v. Abril</u>, 969 So. 2d 201, 204 (Fla. 2007).

It is not disputed that the Trinity defendants had a duty to provide Plaintiff with the renal diet prescribed by his doctors. However, the Trinity defendants had no duty to provide Plaintiff with the food of his choice. "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) (citing <u>Smith v. Sullivan</u>, 553 F.2d 373, 380 (5th Cir. 1977)). The Trinity defendants have offered admissible evidence showing that they did not breach the duty to provide Plaintiff with his prescribed renal diet. <u>See</u> Sternal Aff. at ¶ 5; Bowman Aff. at ¶ 12; Valentin Gonzalez Aff. at ¶ 9 (attesting that Plaintiff received meals that were prepared and served in accordance with Plaintiff's medically prescribed diet); Bowman Aff. at Ex. B, Ex. C (showing menu served to Plaintiff during his stay at the CCJ). The defendants have also presented evidence showing that the meatballs served to Plaintiff did not contain "processed" meat as Plaintiff alleges. <u>See</u> Valentin Aff. at ¶ 7; Bowman Aff. at ¶ 20; Doc. 94-2; Doc. 94-3; Doc. 94-4; Sternal Aff. at ¶ 9, Ex. A (stating that the meat in Plaintiff's renal diet consisted of ground chicken, beef, and turkey, boneless turkey, and chicken breasts and that Plaintiff did not receive processed meats in his meals).

The Trinity defendants have also presented evidence showing that the turkey meatballs were not the cause of Plaintiff's constipation. See Nabavi Depo. at 45-47; Cruz Depo. at 11 (attesting that Plaintiff's constipation was likely caused by his medical condition and the narcotic medication he used); Plaintiff's Depo. at 124 (admitting that he regularly consumes turkey when not incarcerated). The defendants have shown, and Plaintiff has not refuted, that Plaintiff was prescribed medication and other treatment for his constipation and that he refused to use it (Cruz Depo. at 38; Valentin Gonzalez Aff. at ¶ 6). Finally, evidence was presented that only Plaintiff's physicians, not the Trinity defendants, had authority to change Plaintiff's diet. See Cruz Depo. at 21, 24; Nabavi Depo. at 29; Valentin Gonzalez Aff. at ¶¶ 3, 9; Eckloff Depo. at 53, 57. Accordingly, Plaintiff has failed to show that his constipation was caused by the Trinity defendants' alleged refusal to eliminate turkey meatballs from his diet or otherwise alter his renal diet.

The Court finds, based on the evidence in the record, that no rational jury could find that the Trinity defendants were negligent in their provision of meals to Plaintiff. Summary judgment is granted in favor of these defendants on Plaintiff's negligence claims.

**B.   Defendants Crooks, McGowan, and Rambosk are entitled to summary judgment on Plaintiff's First Amendment retaliation claims**

In his second amended complaint, Plaintiff asserted that from September 30, 2011 until July 28, 2012 and from January 3, 2013 until July 19, 2013 he was housed at the CCJ in "cells that lacked the necessary modification to accommodate Plaintiff's disability. These cells lacked adequate area to turn in his wheelchair and did not have transfer mechanisms to allow Plaintiff to safely move between the bed, toilet and sink." (Doc. 113 at ¶ 119). Plaintiff further asserted that "[d]espite having direct knowledge of Plaintiff's disabilities, Defendants refused to provide Plaintiff with his medically prescribed automatic wheel chair and instead required Plaintiff to use manual wheel chair to ambulate which caused damage to Plaintiff's health, safety, and overall well-being." Id. at ¶ 20. Plaintiff asserted that he filed "numerous grievances" regarding the lack of ADA accommodations and "[i]n response to these complaints and grievances, Plaintiff was subjected to increase use of unwarranted restraints, unnecessary isolation and confinement, refusal of medical care and denied access to shower facilities; and Plaintiff was unable to properly navigate the facility because a functioning electric wheelchair was withheld from him." Id. at ¶ 32. Plaintiff also asserted that he was "forced to take meals in the jail cafeteria setting which ultimately caused him to miss his breakfast meal on a repeated basis due to his inability to transfer him within his cell and inability to properly clean himself to be in a presentable state for cafeteria meals. Moreover, the cafeteria facilities lacked

accommodation for Plaintiff's disabilities in that he was not permitted to eat his meals while in his wheelchair thereby restricting his access to basic nourishment." Id. at ¶ 34.

> ### 1.   Plaintiff's claims for compensatory and punitive damages on his retaliation claims are barred by 42 U.S.C. § 1997e(e)

In their motion for summary judgment, the CCJ defendants assert that they are entitled to summary judgment on Plaintiff's retaliation claims under 42 U.S.C. § 1997e(e) because Plaintiff did not allege that he suffered the requisite "physical injuries" to support an award for compensatory or punitive damages (Doc. 155 at 19-20). The CCJ defendants note that Plaintiff does not seek nominal damages in his second amended complaint. Id. at 20. However, in his response to the motions for summary judgment, Plaintiff asks this Court to "add nominal and punitive damage to this 1983 case." (Doc. 176 at ¶ 57).

No 42 U.S.C. § 1983 action "may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002) (stating that "to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis"); Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999) (finding that the Constitution does not "mandate[] a

tort damages remedy for every claimed constitutional violation"),
<u>opinion vacated by</u> 197 F.3d 1059, <u>opinion reinstated in part by</u>,
216 F.3d 970 (11th Cir. 2000).  The statute's clear and broad
language encompasses all claims, including constitutional claims,
and provides for no exceptions.  <u>Al-Amin v. Smith</u>, 637 F.3d 1192,
1197 (11th Cir. 2011).  Moreover, no distinction is made between
"constitutional claims frequently accompanied by physical injury
(e.g., Eighth Amendment violations) and those rarely accompanied
by physical injury (e.g., First Amendment violations)."  <u>Id.</u>
Rather, all constitutional claims are treated equally.  <u>Id.</u>

The facts as alleged by Plaintiff in his second amended
complaint show that he did not suffer a physical injury from
Defendant McGowan's refusal to allow him to use an electric
wheelchair outside his medical cell or from Defendant Crooks'
alleged verbal abuse.  <u>See</u> discussion <i>infra</i> Part V(B)(2)(3)
(describing Plaintiff's allegations of retaliation against
Defendants Crooks and Rambosk).  Even a liberal construction of
Plaintiff's second amended complaint does not satisfy the "more
than <i>de minimums</i> injury" requirement to sustain a claim for
compensatory or punitive damages.[4]  Therefore, the CCJ Defendants

---

[4] Plaintiff does not avoid the statutory bar of § 1997e(e)
merely because he didn't specifically allege an "emotional"
injury.  The words "mental" and "emotional" do not have
"talismanic significance in prisoner pleadings" and Plaintiff
cannot avoid § 1997e(e)'s bar merely by remaining silent on the
nature of his injury.  <u>Al-Amin</u>, 637 F.3d at 1197 n.5.

are entitled to summary judgment on Plaintiff's claims for compensatory or punitive damages, and any request for relief on Plaintiff's retaliation claims against the CCJ defendants would necessarily be limited to nominal damages. See Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)(concluding that § 1997e(e) does not bar suits by prisoners who have not alleged a physical injury if they seek only nominal damages).  However, as discussed in this Order, because the CCJ defendants are entitled to summary judgment on Plaintiff's retaliation claims, Plaintiff's request that he be allowed to add a claim for nominal damages will be denied.

### 2.   Defendant Crooks is entitled to summary judgment on Plaintiff's retaliation claim

In his second amended complaint, Plaintiff asserted that Defendant Crooks retaliated against him for the use of the grievance process by "antagonistically" yelling "meal calls into Plaintiff's audio box knowing that Plaintiff's disability prevented him from physical [sic] being able to go to the meal location.  In addition, defendant Alan Crooks would intentionally kick Plaintiff's cell door and slam the metal flap on the door in retaliation against Plaintiff for filing grievances in regards to Plaintiff's food and digestive related issues.  This continued pattern of retaliatory behavior cause Plaintiff to suffer both physical and emotional damage." (Doc. 113 at 36).  In his motion for summary judgment, Defendant Crooks asserts that Plaintiff's

allegation of verbal abuse "simply does not give rise to a cause of action under 1983." (Doc. 155 at 10).   Defendant Crooks also argues that Plaintiff's retaliation claim fails because his allegations are merely conclusory. Id. at 11.

Although not described in Plaintiff's second amended complaint, from later pleadings filed with this Court, it appears that Plaintiff believes Defendant Crooks "retaliated" against him for filing grievances with Defendant McGowan and Marcia Eckloff in which Plaintiff insisted that his breakfast tray be delivered to his bedside because he (Plaintiff) suffered from uncontrollable morning muscle spasms, making it difficult for him to get out of bed to retrieve his breakfast tray. See Doc. 178 at 115-121.[5]   In November and December of 2011, Plaintiff filed numerous grievances in which he complained that the deputies placed his breakfast tray on his door flap and that "uncontrollable muscle spasms" prevented him from retrieving the tray. Id.   In response to these grievances, it was explained to Plaintiff that CCJ nurses would assist Plaintiff out of bed and into his wheelchair in the morning so that he could retrieve and eat his breakfast (Doc. 163-3 at 38, 39, 40).   Plaintiff refused the nurses' help. Id.

---

[5] Plaintiff was informed by Marcia Eckloff that no medical order had been written for Plaintiff to receive breakfast in bed (Eckloff Depo. at 29).   In her deposition testimony, Dr. Cruz stated that, despite Plaintiff's assertions otherwise, she never ordered that Plaintiff receive breakfast in bed (Cruz Depo. at 50-51).

Defendant Crooks' assertion that any alleged verbal abuse did not rise to the level of an independent constitutional violation is unavailing.  If proven, Defendant Crooks' alleged verbal abuse need not independently rise to the level of a constitutional violation to state a First Amendment retaliation claim. See Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989)("To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."). Rather, the core of a retaliation claim is that the prisoner is being retaliated against for exercising his right to free speech. Farrow, 320 F.3d at 1248.   However, Plaintiff's conclusory assertion that Defendant Crooks engaged in retaliatory behavior by "antagonistically" informing Plaintiff of his mealtime (presumably without bringing the tray to Plaintiff in bed) is without record support and does not state a First Amendment retaliation claim.

The record evidence shows that Plaintiff complained to both Defendant McGowan and Marcia Eckloff that he could not get out of bed early enough to retrieve his breakfast from the door flap. Plaintiff was offered the assistance of nurses to get out of bed and into his wheelchair in the mornings so that he could eat breakfast; Plaintiff refused such aid – preferring instead that his breakfast tray be brought to his bedside (Eckloff Depo. at 38, 39, 40).  In his responses to Plaintiff's grievances regarding Plaintiff's complaints that he was being awakened too early, Defendant McGowan stated that "we wake you up so you can get up

without harm.  If one hour is not enough, we will accommodate you by waking you up earlier[.]" (Doc. 178 at 117).  McGowan also informed Plaintiff that he (Plaintiff) would be given three notices that breakfast was coming so that he could accept his meal. Id. at 177.

Nothing in the record supports a conclusion that Defendant Crooks' actions were based upon a retaliatory motive.  To the contrary, the record evidence suggests that Defendant Crooks' conduct was predicated upon a desire to wake Plaintiff in time to retrieve his breakfast tray.  Plaintiff also fails to indicate what, if any, deterrence Defendant Crooks' "verbal abuse" had on the exercise of his First Amendment rights. See Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (holding that "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights")(internal citations omitted). Negative statements in general made by a defendant without threat of physical violence or any other consequence would not likely deter a person of "ordinary firmness" from exercising his rights. Woods v. Valentino, 511 F. Supp. 2dd 1263 (M.D. Fla. May 14, 2007). Instead, Plaintiff merely offers general, conclusory allegations that Defendant Crooks was unpleasant towards him because he filed the instant action.  Without more, these allegations cannot support a First Amendment retaliation claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("In civil rights

. . . actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory"); Larken v. Perkins, 22 F. App'x 114, at *1, n.1 (4th Cir. 2001) (the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment.).

Defendant Crooks has submitted admissible evidence showing that his actions towards Plaintiff were not predicated upon a retaliatory motive, and Plaintiff has not countered that evidence with anything other than his own unsupported allegations. Plaintiff's allegations against Defendant Crooks, standing alone, do not state a viable retaliation claim. Defendant Crooks is, therefore, entitled to summary judgment on Plaintiff's First Amendment retaliation claim. See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, at 365 (4th Cir. 1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56."), overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

### 3. Defendant McGowan is entitled to summary judgment on Plaintiff's retaliation claim

In his second amended complaint, Plaintiff asserted that Defendant McGowan retaliated against him for filing grievances (Doc. 113 at 35).  Specifically, Plaintiff asserted that Defendant

McGowan placed him on administrative lock-down, refused to provide adequate accommodation "to ambulate in a safe manner," denied Plaintiff access to his medically ordered renal diet, and refused to provide Plaintiff with sufficient medical supplies. Id. At his deposition, Plaintiff explained that Defendant McGowan told him that he must get out of bed for breakfast, required that he shower in the morning instead of the evening, and forced him to stay in an ADA compliant cell which did not have television or unlimited access to a telephone (Plaintiff's Depo. at 16, 28, 61, 72, 78, 83). Plaintiff complained that the other jails he's been in "went out of their way to accommodate" him, but that the Collier County Jail did not do so. Id. at 81-82. In the motion for summary judgment, Defendant McGowan states that the record evidence shows that "there is no causal connection between the alleged writing of grievances and Plaintiff's previous federal lawsuit and Plaintiff's housing in the medical unit by Defendant McGowan." (Doc. 155 at 11).

At his deposition, Plaintiff admitted that, contrary to his allegations in his second amended complaint, he has had an electric wheelchair at the Collier County Jail since 2007 (Plaintiff's Depo. at 16, 45, 48). He admitted that during the time period at issue in this lawsuit, he generally had no difficulty receiving his catheters (Plaintiff's Depo. at 18). He admitted that his ADA compliant cell had enough space to turn his wheelchair around, he had no difficulty entering or exiting his cell with his wheelchair,

he had an electric hospital bed and the cell was equipped with a trapeze bar and transfer bars (Plaintiff's Depo. at 61-65). Plaintiff admitted he was not placed in the medical unit as a disciplinary measure (Plaintiff's Depo. at 73).   It has also been established that Plaintiff received a medically prescribed renal diet while at the Collier County Jail. See discussion *supra* Part IV(A)(1)-(2).   Therefore, the only remaining issue of material fact is whether Defendant McGowan's decision that Plaintiff could not use his electric wheelchair in area 2B[6] of the Collier County Jail was motivated by a desire to retaliate against Plaintiff for writing grievances or filing lawsuits.[7]

In his affidavit, Defendant McGowan attested that Plaintiff was allowed to go to 2B while he was incarcerated at the CCJ, but that he refused to go unless the jail secured someone to push his

---

[6] Plaintiff appears to assert that 2B is common area. However, in her deposition, Marcia Eckloff described 2B as a unit housing inmates with limited mobility or skin infections (Eckloff Depo. at 24). Eckloff testified that inmates in medical, such as Plaintiff, are generally housed in their cells. Id.

[7] At his deposition, Plaintiff admitted that he was given daily opportunities to shower and was allowed to use the telephone in the medical unit where he was held (Plaintiff's Depo. at 78, 83). Plaintiff asserts that in contrast to the prisoners in the medical cells, prisoners in 2B are allowed to shower whenever they want (instead of only in the morning) and are allowed unlimited access to the telephone.   Accordingly, the crux of the instant retaliation claim against Defendant McGowan is that Plaintiff is not allowed access to 2B. Therefore, Plaintiff's assertions that McGowan retaliated against him by restricting his access to unlimited showers, telephone use, and television viewing was a result of Plaintiff's inability to access 2B and will not be separately addressed.

manual wheelchair (McGowan Aff. at ¶ 10).  Plaintiff admitted that
he had initially been allowed to visit 2B and that the jail had
provided someone to push the chair to and from 2B, but Plaintiff
had to use the manual wheelchair to navigate 2B while he was there
(Plaintiff's Depo. at 75-76).  However, a doctor subsequently told
Plaintiff that he should never use a manual wheelchair,[8] so
Plaintiff was no longer taken to 2B, presumably because the jail
refused to provide Plaintiff with someone to push his manual
wheelchair while there. Id. at 77; Doc. 197 at ¶ 5.  Plaintiff
argued at his deposition that he should have been allowed to use
his electric wheelchair in 2B. Id. at 77-84.

It is undisputed that McGowan refused to allow Plaintiff to
use his electric wheelchair in 2B.  Defendant McGowan attested
that he and other jail administrators decided that Plaintiff could
not use a battery operated electric wheelchair in the open
population due to security concerns of having a battery containing
lead and sulfuric acid around inmates who could use the battery to
cause harm to staff members or other inmates (McGowan Aff. at ¶
6).  Defendant McGowan attested:

> The decision to house Mr. Romano in cell 20 of
> the jail's medical unit was not in retaliation
> to Mr. Romano filing the previous civil rights
> lawsuit, or for filing thousands of
> grievances.  Rather, it was triggered by
> security reasons posed by the use of the
> electric wheelchair in open population.
> Further, I had checked with other Jail

---

[8] It is undisputed that Plaintiff suffers from carpel tunnel
syndrome. See Eckloff Depo. at 20.

> commanders in Florida, and none allow electric
> wheelchairs in general population.

Id. at ¶ 11.  Defendant McGowan also attested that Plaintiff would

not be able to recharge the battery to his electric wheelchair in

the general population. Id. at ¶ 5.

Plaintiff has failed to establish a causal connection between

his constitutionally protected activity (the filing of lawsuits

and grievances) and the adverse actions of Defendant McGowan

(McGowan's refusal to allow Plaintiff to use his electric

wheelchair in 2B).  The Second District Court of Appeals has noted

that any adverse action taken against a prisoner by a prison

official - even those otherwise not rising to the level of a

constitutional violation - can be characterized *by the prisoner* as

a constitutionally proscribed retaliatory act. Dawes v. Walker,

239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds,

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).  Therefore,

courts must approach prisoner claims of retaliation with

skepticism and particular care. See Flaherty v. Coughlin, 713 F.2d

10, 13 (2d Cir. 1983).  This is necessary because prisoners' claims

of retaliation are "easily fabricated" and "pose a substantial

risk of unwarranted judicial intrusion into matters of general

prison administration." Dawes, 239 F.3d at 491.

The record is devoid of evidence, other than Plaintiff's own

conclusory assertions, that Plaintiff was denied the right to use

his electric wheelchair in the general population in retaliation

for filing lawsuits and grievances.  Rather, the record indicates

that the denial was due to Defendant McGowan's legitimate concerns
about the security and the safety of others since the substances
in the wheelchair's battery could be used as weapons.  Plaintiff
has not refuted Defendant McGowan's statement that no other jail
in Florida allows electric wheelchairs in the general population.
The security concerns of the jail commanders in Florida are
entitled to deference because prison policies concerning security
"are peculiarly within the province and professional expertise of
corrections officials, and, in the absence of substantial evidence
in the record to indicate that the officials have exaggerated their
response to these considerations, courts should ordinarily defer
to their expert judgment in such matters." Turner v. Safley, 482
U.S. 78, 86 (1987); Defreitas v. Montgomery County Corr. Facility,
525 F. App'x 170 (3d Cir. 2013) (prison's decision to restrict
prisoner from bringing crutches to general population based on
legitimate security concerns).

     There is no genuine dispute of material fact on this claim.
Plaintiff offers only the conclusory allegation that he was
restricted to the medical unit in retaliation for filing
grievances.  Plaintiff has not shown any connection to his
engagement in protected First Amendment activities and the conduct
of Defendant McGowan.  The record before the court is devoid of
evidence, direct or otherwise, from which a reasonable fact finder
could infer the requisite motivating factor.  Additionally, the

circumstances, when taken as a whole, do not support making such an inference.

Defendant McGowan is entitled to summary judgment on Plaintiff's First Amendment claim because Plaintiff fails to establish a causal relationship between the alleged protected activity and any adverse action taken against him.

### 4.    Defendant Rambosk is entitled to summary judgment on Plaintiff's retaliation claim

In his second amended complaint, Plaintiff asserted that "[t]he acts of the individual defendants in retaliating against Plaintiff because of his utilization of the grievances, appeals and court process was the result of a policy and/or custom of encouraging, tolerating, permitting or ratifying a pattern of such behavior which has been known to the Collier County Sheriff's Office prior to this incident and because of the failure to properly address and correct this activity." (Doc. 113 at 37).

It is well established that supervisory officials are not liable for the alleged unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Supervisory liability can only be established "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Williams v.

Santana, 340 F. App'x 614, 617 (11th Cir. 2009).  A plaintiff can

establish a causal connection when:

> 1) a 'history of widespread abuse' puts the
> responsible supervisor on notice of the need
> to correct the alleged deprivation, and he or
> she fails to do so; 2) a supervisor's custom
> or policy result[ed] in deliberate
> indifference to constitutional rights; or 3)
> facts support an inference that the supervisor
> directed the subordinates to act unlawfully or
> knew that subordinates would act unlawfully
> and failed to stop them from doing so.

Matthews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (citing

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).  The

standard by which a supervisor is held liable for the actions of

a subordinate is extremely rigorous.  Gonzalez v. Reno, 325 F.3d

1228, 1234 (11th Cir. 2003).

Plaintiff did not allege that Defendant Rambosk personally

retaliated against him or that a history of widespread abuse should

have put Defendant Rambosk on notice of the need to correct

retaliatory actions by Collier County Jail staff.  Plaintiff did

allege that Defendant Rambosk had a policy or custom of

"encouraging, tolerating, permitting or ratifying a pattern of

such behavior." (Doc. 113 at 37).  In order to demonstrate a policy

or custom, a plaintiff must show a "persistent and wide-spread

practice" of abuse. Depew v. City of St. Mary's Ga., 787 F.2d 1496,

1499 (11th Cir. 1986).

Plaintiff has not identified any particular policy or custom

with specificity.  Moreover, as discussed in this Opinion and

Order, Plaintiff has demonstrated no instances of retaliatory

behavior by the Collier County Jail staff from which a policy or custom of toleration could be inferred. See discussion supra Part V(B)(2)-(3). As such, Plaintiff has failed to show a causal connection between the actions of Defendant Rambosk and any alleged constitutional violation. Defendant Rambosk is entitled to summary judgment on Plaintiff's retaliation claim.

### C. Plaintiff's Responses to the Motions for Summary Judgment and "Motion Incorporating all Grievances and Notary Letters In To Evidence in the Form of Exhibit's Filed in Support of [Summary] Judgment as if Fully Set Forth Herein"

Plaintiff has filed three lengthy pleadings that appear to be in response to the defendants' motions for summary judgment (Doc. 176; Doc. 177; Doc. 178). The second of these pleadings contains sixty-three pages of handwritten notes describing grievances Plaintiff filed while at the Collier County Jail (Doc. 177). Plaintiff also filed with this pleading a box containing hundreds of bundled handwritten grievance forms and a compact disc containing over five hundred pages of Plaintiff's medical records (Doc. 177-1). These documents appear to be a subset of those submitted with Plaintiff's original complaint that were rejected by this Court on July 25, 2012 (Doc. 16). In re-submitting the documents, Plaintiff has not provided "a table of contents or index (with a title, description, and date of each document)" as was directed by this Court two and a half years ago. Id. at 2.

If the pleading at docket entry 177 is an attempt to describe the relevant grievances at issue in his second amended complaint,

the motion is granted to the extent that the Court will consider the arguments and evidence described by Plaintiff in docket entries 176, 177, and 178.  However, the Court will not independently examine each of the thousands of bundled documents in an attempt to discover evidence to support Plaintiff's constitutional claims.

Docket entry 178 appears to contain Plaintiff's attempt to file a third amended complaint raising additional claims against the Trinity and CCJ defendants and also raising claims against additional defendants, many of whom have already been dismissed from this action (Doc. 178).  Plaintiff has not filed a motion seeking leave to file a third amended complaint, and to the extent the pleading at docket entry 177 seeks such permission, it is denied.

This case was filed more than two and a half years ago and involves conduct that is four years old.  Plaintiff was given an opportunity to file a third amended complaint, but did not do so, even though he sought, and was granted, an extension of time to amend (Doc. Nos. 133, 135).  Plaintiff did not object when his counsel sought permission to withdraw from this case without filing a third amended complaint (Doc. 146), and Plaintiff did not seek permission to file a third amended complaint until weeks after the close of discovery (Doc. 148).

When a motion to amend is filed after the deadline imposed by the scheduling order, the moving party must show good cause to amend. Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th

Cir. 2005) ("Because [defendant] moved to amend after the deadline in the scheduling order, Federal Rule of Civil Procedure 16, which requires a showing of good cause to modify a scheduling order, is also relevant[.]"); see also Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.").

The relief now sought by Plaintiff would delay adjudication of this case and prejudice the remaining defendants and those who have been dismissed – both in terms of undue delay to the disposition of this case and the costs and fees already expended on discovery.  See Keeler v. Fla. Dep't of Health, 324 F. App'x 850, 858 (11th Cir. 2009) ("[Plaintiff] filed her motion for an extension of time to amend her complaint after the close of discovery and filed her motion to amend over a month after the deadline for such motions had passed. . . . [Plaintiff's] proposed amended complaint . . . would have resulted in additional discovery and delayed disposition of the case.  Accordingly, we cannot say that the district court abused its discretion in denying [Plaintiffs] motion for an extension of time, motion to reconsider, or motion to amend the complaint."); Systems Unlimited, Inc. v. Cisco Sys., Inc., 228 F. App'x 854, 857 (11th Cir. 2007) (affirming district court's denial of leave to amend, responding to movant's claim that district court could have re-opened discovery to cure

prejudice, "a district court has wide latitude in refereeing discovery, and we will not question the limits set by the court unless they are clearly erroneous or not rationally supported by the evidence."); <u>Watkins v. Farmers & Merchants Bank</u>, 237 F. App'x 591, 592 (11th Cir. 2007) (affirming district court's denial of leave to amend because the plaintiff moved for leave to amend after the deadline for amendments; the proposed amendment included new parties and new claims; and granting the motion after the close of discovery would have resulted in considerable prejudice to the defendants.

To the extent Plaintiff intended to request leave to file a third amended complaint in docket entry 177, the motion is denied.

## VI.  <u>Conclusion</u>

Because summary judgment is granted in favor of the defendants on each of Plaintiff's claims, this Court will not address the defendants' assertions that they are entitled to qualified immunity; the Trinity defendants' assertion that they are entitled to immunity on Plaintiff's negligence claims under Florida Statute § 768.28(9)(a); or the Trinity defendants' argument that Plaintiff's claims for compensatory damages are barred by 42 U.S.C. § 1997e(3).

In accordance with the foregoing, it is hereby

**ORDERED:**

1.   The motion for summary judgment on Plaintiff's civil rights claims filed by Defendants Tom Bowman and Sandra Sternal (Doc. 161) is **GRANTED**.

2.   The motion for summary judgment on Plaintiff's negligence claims filed by Defendants Tom Bowman, Sandra Sternal, and Trinity Services Group, Inc. (Doc. 162) is **GRANTED.**

3.   The motion for summary judgment filed by Defendants Alan Crooks, Kevin McGowan, and Kevin J. Rambosk (Doc. 155) is **GRANTED.**

4.   The "Motion Incorporating all Grievances and Notary Letters into Evidence in the Form of Exhibits Filed in Support of Summary Judgment" (Doc. 177) filed by Plaintiff is **GRANTED** to the extent the motion asks the Court to consider the arguments and evidence described by Plaintiff in docket entries 176, 177, and 178.  The motion is **DENIED** to the extent Plaintiff seeks leave to file a third amended complaint.

5.   The **Clerk of Court** is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___18th___ day of February, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: All Parties of Record